When you're ready, Mr. Clayton. Thank you, your honor. May it please the court. I'm here today with my colleague, Dan Marks, and Ann Moses, who's Chief Trademark Counsel at Citigroup, represents Citigroup, who is the appellant in a decision from the Trademark Trial and Appeal Board dismissing four oppositions to a standard character word application consisting of the words capital, city, and bank. There are two issues for the court. The first is whether there's only one reasonable variation to that standard character word, which is what the board found. The board found that the only reasonable variation to capital, city, bank was one that emphasizes capital city and minimizes bank. The board found that it was not a reasonable variation of a three-word mark to emphasize the city bank portion of the mark. The second is, assuming even if they did, you'd still have to deal with the, this is a three-word mark, yours is a one-word mark, and those three words are distinctively different. That is the second issue, your honor. The first question is, do you have to consider that reasonable variation, and what the board said was that you did not have to. There's a two-part analysis. I mean, one, do you have to consider it? Well, didn't the board, I'm confused, didn't the board say it was not a reasonable variation? Board said you do have to consider reasonable variations, and then they said you don't have to consider this because it's not a reasonable variation, right? That's correct. And it gave two reasons for why it's not a reasonable variation. One is the historical use, which under the court's precedent is not a valid reason for saying something is not a reasonable variation. Well, is there any evidence that it was ever used that way? No. And that's the court's discourse decisions and the board's decisions are clear that the fact with a standard character application that a mark is not used in that way is not evidence that other variations are unreasonable. Is there a deferential standard? What standard do we apply in reviewing what the board found was a reasonable or not reasonable variation? Your Honor, I've been unable to locate any case from this court or the Trademark College Appeal Board that's addressed the precise issue of who has the burden of proving what's a reasonable variation or the evidentiary standard that's appropriate for that. Has our court ever embraced the reasonable variation standard? Do you have cases in that? Because I had a hard time finding that, not the board, but our court. I thought the cases that we cited in the brief at the Court of Appeals for the Federal Circuit as well as the CCPA had long held that if you're dealing with a standard character application, all reasonable variations must be considered. The reason for this is with a standard character, which is a type draw, if a registration issues, the registrant gets exclusive presumptive rights to use all reasonable variations of that mark. If the registrant shouldn't have a registration if it's not entitled to use all reasonable variations. But what you're saying is a reasonable variation is the use, which has never been done before, but the use of the capital in a way that can barely see it relative to the words city, y, with a y, not an i, and bank. Yes. And there are two parts to that. One, you do the analysis, and the second is what's the conclusion. And the first part is, do you even have to do that analysis? And if, I mean, I believe this court has long established, including its predecessor court, that with standard character applications, you have to consider all reasonable variations. And if you've got a three-word mark, they're not, you know, it's a fundamental variation. You can either emphasize the first word, you know, the first two words, minimize the last, or de-emphasize the first and emphasize the second. It's a very basic variation. Back to the same point, though. Whether you're emphasizing or not, it's still there, and you've got a three-word mark versus a one-word mark with a great deal of difference there.  The mistake, Your Honor, is in the analysis. And I, as a practitioner, I really think this is an important point that the board could benefit from direction on. And that is, in terms of analysis of standard character marks, all reasonable variations should be considered, and you run it through the DuPont analysis. Just to get to the point that both of you have alluded to, if you take, it's not an automatic. I mean, if you're emphasizing the Citibank portion, and you have a financial services term, capital, combined with Citibank, you still have the difference of it's two words, not one, and you have an I, not a Y. You have that difference. You also have a factual finding by the board that the mark is famous, and under Your Honor's decision in the Kenner-Parker-Toy case, that gives us a broad scope of rights. You have identical services, which also, under one of your decisions, gives a strong presumption in favor of the trademark owner. And so... Where is the likelihood of confusion element then come into play in all of this? The likelihood... Is that an overriding issue? Your Honor, with a standard character mark, I submit that the first step is to see what the reasonable variations are, and then you run each reasonable variation through the DuPont analysis. Four of the factors that the board found below will stay the same. But as the Chief Judge pointed out, it's a three-word mark, and the spaces in between, I guess, could be used to change the reasonable variations, as you pointed out, capitalize them all, or capitalize the initial caps or otherwise. But is that overridden by the likelihood of confusion in the DuPont analysis? In other words, what I'm trying to figure out, and maybe you take the likelihood of confusion in conjunction with the reasonable variations, is some reasonable variations might create more confusion than others. Your Honor, if any reasonable variation creates a likelihood of confusion... Just one? Just one. And that's because, as I was articulating, with respect to a standard character application, if it matures into a registration, the owner gets exclusive presumptive rights to all reasonable variation. How can the board issue a registration that gives those rights when there hasn't been a determination that it has the rights to all of those variations? This is not a hypothetical. I mean, it's a peculiar case in the sense that it really has to do with trademark practice and standard character registrations and their peculiar characteristics. But it seems to me your position has probably been in the past that you're entitled to a registration, that what makes your registration distinct is that it has an I rather than a Y. Right? I mean, you presumably emphasize that difference in various contexts, I assume. It's not a Y. I mean, it's significant that it's an I, and now you're trying to expand the scope of your mark to cover Citibank with a Y, which is clearly something that's beyond the scope of what you've got in terms of your protection, no? I respectfully disagree, Your Honor. We've had enforcement policy that has spent over $20 million in the years going after lots of Citibanks, including CITY, BANK, separate words. And the trademark analysis is, this isn't a patent in the sense of it's within our scope or without. We have a trademark right which gives us exclusive rights if we can prove the likelihood of confusion. Can we deal just a second with the actual confusion evidence or absence thereof? The proximity in the southeast region here of Citibanks and Capital Citibanks has been very close, and yet you could not produce any actual confusion. What does that tell us? The absence of actual confusion is relevant under an Ina Ricci case, only if there's been an opportunity. In this case, the reasonable variation, which emphasizes Citibank, has never been used. The testimony has never been used. The testimony, it's never intended to be used. So there's not a question. This is not a question of use. If the applicant actually is Capital City, they could have an unrestricted standard character registration for Capital City. And when it goes after Capital City, realty will be easier, or Capital City mortgage will be easier. The problem is Capital City Bank, and you have a conflict between the Citibank ownership issue and the Citibank with an... I'm a little confused by your answer to the Chief's question. It seems to me it's kind of circular. You're supposed to come up with some evidence of the likelihood of confusion. It seemed to me you acknowledged there was no evidence, and you didn't come forward with any evidence. But your reason was, well, they've never used it in the way that we're contemplating is a reasonable use, and they say they never intended to. Is that what's contemplated under DuPont, the DuPont analysis?  It would be like with an intent to use analysis, Your Honor. If it hasn't been used in that format, then there's an absence of actual confusion, but there hasn't been an opportunity for confusion. In every reasonable variation, you're going to have a three-word mark that starts with Capital, right? Every variation's going to have to be Capital City Bank. And the essential finding of the Board is that is not going to be confused with a one-word Citibank. Capital City Bank is not going to be confused with Citibank. Why is that not supported by substantial evidence? It's not supported by substantial evidence because it doesn't... It's as if it's a one... It's not a variation. It's Capital City Bank. And doesn't that always have to be true? That's the mark they've claimed is a three-word mark that starts with Capital. Well, Your Honor, I guess I would point to the Phillips 66 case, which I believe is a CCPA case, and that involved the typed drawing for CRC Marina 66.66. And the court found that it conflicted in refused registration with a prior registration for 66, even though it was long. And it was said because in the actual use, and here in the history there was an actual use, you could look at an advertisement and they pulled out and did 66 in large letters. It's the same... The same thing with... If you look at the Board's depiction of Capital City Bank and the prior registration defense, which was correctly rejected, it has a small capital below City Bank. If your position is that City Bank, C-I-T-Y space bank, never conflicts with C-I-T-I-V-A-N-K, then that is the end of the analysis. But there needs to be a conclusion to that effect because otherwise, the depiction of Capital with a prominent City Bank will be a financial services term combined with City Bank. And to us, that's infringement. Did I answer your question? Well, I understand your point. I don't... I'm not sure if it answers the question or not. Okay. But you would still have the opportunity in case of actual confusion or otherwise, if the Patent Office issues the mark, registration for the mark, to sue at that point. Your Honor, you're correct. But in practical terms, what's going on is two things. One, in terms of senior registration, and there aren't registrations except for two that include City Bank, C-I-T-Y space B-A-N-K. So there's the notice provision. The other is, let's assume that the Capital City Bank registration issues in standard format. Let's assume five years from now it becomes incontestable. Let's assume that the leadership, the current corporate leadership of Capital City Bank changes, and they say, hey, we've got an incontestable federal registration for Capital City Bank, which entitles us to use any reasonable variation. So we're going to start using it, emphasizing capital... I mean, deemphasizing capital and emphasizing City Bank. We will have a tough row to go in explaining to a district court judge how the board and this court allowed that registration to issue, and they can't use that variation. But if you had actual evidence of confusion, it certainly would be a much stronger case at that point. Right. We would have to bring that case in the face of an incontestable registration. But it would, you know... It's not insurmountable. Theoretically, that's correct. You want to save your rebuttal time? I do. Thank you. Thank you. Mr. Baranato. Thank you, Your Honor. Your Honor, Citigroup has admitted that in 1895 Capital City Bank was founded. It's not disputed that since 1895 it has used the term Capital City Bank in one form or another, continuously thereafter. Trademark rights come into being through use. They don't come into being through the trademark office issuing a certificate of registration. I think that's the fundamental flaw in what's going on here. Capital City Bank has... But the issue before us is the registration. That's absolutely correct. You'd have to go to state court on your common law use arguments. So, focusing on the registration, is there any error in the board's decision to disregard as unreasonable some variations that could be used of your mark? I don't think the board disregarded any reasonable variations. The board, in its opinion, set forth the standard for analysis of standard character marks. I've heard the argument about the board didn't consider reasonable variations, but there is no evidence of record as to what these other reasonable variations would be that would allegedly cause confusion. As far as I know, there is nothing in the record from any witness or anyone that says a reasonable variation would be to completely de-emphasize capital so that you can't really even see it. What if I had City Bank in flashing neon lights and written in small, practically invisible letters capital above that? Would that create a problem? I think that's an unreasonable variation for our use, Your Honor, because that's not the way we use it. Well, but it's a standard character mark. You could conceivably use it that way, right? We could theoretically use it, but would that be a reasonable use? And I think that's the difference. Well, that's the question. Has the board stretched its decision of reasonableness too far, or has it gone not far enough? I think the board drew the proper balance, Your Honor. The board looked at our mark. It looked at our historical use of the mark. It also looked, frankly, at the existing trademark register where I would note there's a number of standard character registrations that incorporate something City Bank. There's a surf City Bank, standard characters, no restrictions for banking services. There's been other standard character marks. The board also looked at evidence that we submitted of, I believe, 40-plus banks in something City Bank. Many of these banks predate when City Bank says it adopted its name City Bank. And the board looked at those existing banks that are out there and said that the banks have been using those for an extended period of time. Some of those banks, by the way, are multi-state banks. We took deposition testimony of four of those banks to introduce into the record how they were using their mark, how long they'd been using their mark. And the board took all of that into consideration. Of course, that's part of the question, isn't it? Mr. Clayton challenges whether historical use is really a proper way to determine reasonableness. Have we said that that's the way you determine reasonableness? In the Phillips decision, Your Honor, which is the CCPA decision. That's binding on us? The court, in fact, did look at the historical use, and they looked at the specimens that had been submitted by the applicant in order to ascertain what would be a reasonable use. And so, therefore, I think there is that precedent. I think, more importantly, the question was asked of Felicia Braswell. I think she's the vice president of marketing for Capital City Bank. Have you ever emphasized the City Bank portion as opposed to the Capital City Bank? And she testified, no. And when asked why not, she said, that's not our name. I mean, for 115 years, almost 116 years now, this bank has been known as Capital City Bank. I think it's unreasonable for Citibank to now say, or Citigroup, to come along and say, well, you could change it. You could do this. Why would we give up 116 years of goodwill with our customers? People have been dealing with this bank. Ms. Braswell testified she'd been dealing. She was the vice president of the bank. She said she had an account when she was a child. Why would we now suddenly want to go to a different name? Why would that be reasonable? So there is no evidence that, in fact, these so-called reasonable variations are reasonable. And to go to Judge Garage's question, even if reasonable, there is no evidence of likely confusion. Citigroup brought this opposition. They didn't raise this reasonableness variation argument in the TTAB, I might add. All they said in the TTAB was, well, you can have standard character registrations and no FON or anything. But they didn't specifically raise this argument. Then they presented no evidence of likely confusion of these so-called reasonable variations. So even if you wanted to say these were reasonable, there's no evidence of likely confusion. That's their burden to prove, not mine. And at the end of the day, I think, Judge Rader, the question you raised, we're still Capital City Bank. No matter what you want to do, we're Capital City Bank. You can make it small. You can have it in different color letters. But at the end of the day, we're Capital City Bank. When we have radio advertisements and there's radio commercials that are in the record, what was it? Capital City Bank. We didn't emphasize a logo. And, in fact, one of the reasons for this registration is the fact that people change logos over time. Capital City Bank has, over time, changed its logo. And so if we have to refile every time simply because we decided for marketing purposes to change our logo, we've been potentially losing our rights to incontestability, to our ability to say we've been using this name, Capital City Bank, to somebody else. You stop. Now they can challenge it on whatever basis. So the advantage of Capital City Bank finally coming to grips with getting this registration, it is simply protecting the name it's been using since 1895. Without, I might add, opposition from Citigroup. But they never really applied for a mark before, standard mark before. They never did, Your Honor. So once they get that registration, they always change their mark. We can change our mark, but it's always Capital City Bank, three words. It always has a why. It doesn't have an I. And it doesn't take City Bank and compress it into one word, which is what Citigroup has done. I mean, at the end of the day, that's who we are. That's what Ms. Raswell told you. That's our name. That's the reason why I asked the question about likelihood of confusion. Within the parameters of reasonableness, there's a likelihood of confusion. And one element, maybe the overarching element, that should be considered. The board looked at the evidence on actual confusion. And it said there'd been 35 – it went back to 1975. It said there's 35 years' use here. There's no evidence by either side of any actual confusion. Citibank will tell you it's the most famous bank in the world. It's known all over the country. It's known all over the world. And yet in 35 years, there's been not one evidence, not one incidence of actual confusion known to either party. So our view is that, in fact, there's been more than ample opportunity. The board correctly analyzed the actual confusion factor. Their argument is essentially, well, because you haven't used all possible variations, then the opportunity has never arisen. That's never been the law in this court. Never been the law at the TTAB. The reality is if you ask somebody, where do they bank, they say Capital City Bank. They don't say Capital City Bank star logo. That's the reality. If you ask any consumer, where do you bank, they're not going to tell you with some logo. So our Vice President Marking testified when asked about, you know, going to your question on opportunity for confusion. She testified that we use Capital City Bank on one line, and there's evidence in the record to that effect. We use it on two lines. There's evidence in the record to that effect. There's evidence in three lines. There's evidence with and without the logo. We've been doing that for 115 years. With all of that use, we have branches in three states. They claim that they're famous throughout the world. Clearly, they're famous in Florida, if you want to believe them. They have ATM machines in Florida. We have in the record, the board cited a report that we placed, which located their locations, as they called them on their city bank locator. Their locations relative to ours to show that there was geographic proximity, which was the argument below, by the way, for no actual confusion. It was geographic proximity and the star logo. So this new argument about you haven't used all reasonable variations, so therefore, you know, there's been no opportunity for actual confusion. That's just been come together for the purposes of this brief. That was never raised before with the TTAB. At the end of the day, Your Honor, the TTAB looked at a very extensive record. It was thousands and thousands of pages with deposition testimony, all sorts of printouts, web pages from various banks, advertising from them. And at the end of the day, the board looked at all of that evidence and concluded that there would be no likely confusion between capital city bank, three words, and city bank. The board looked at the critical IY distinction, which we think has been recognized in the New York decision, which we cited when they sued whatever the bank was that they sued up there. And in fact, Citigroup itself has pointed to the I when it's tried to get licensing and approvals. It's pointed to that I and said, you know, there was, I think, city mortgage in Chicago, CITY mortgage, and they applied for city mortgage, CITI mortgage. And there's a letter, it's in our brief, it's in the record. You know, the argument was made, well, wait a second, there'll be no confusion. We're the I guys, and everybody knows us as the famous I guys. So the consumers will be able to tell you apart. There's another one where they did city financial. They did the same argument there. And in fact, there's testimony that says that they have coexisted with numerous financial entities using the term city for decades without confusion. Another point I'd like to address is this new argument, by the way, that capital is a financial term. So therefore, consumers are disregarded when they're assessing capital city bank. There's no evidence that, in fact, consumers recognize capital as a financial term. If you look it up in the dictionary, that's merely one of a number of definitions. That is not the definition. As the party who now wants to espouse that argument, it's our position that they had the opportunity, and they had the burden of presenting evidence to establish that consumers would ignore capital when they considered the mark capital city bank. So we believe that the board properly considered the evidence. The board properly weighed all the factors. It didn't address, but we put into evidence the actions which capital city bank has taken to enforce its marks. I mean, it's going after other banks. One confusion has occurred. It's going after a bank. It was capital city bank and trust out of Atlanta. It's going after a real estate company who was doing mortgages. There was a mortgage company. I mean, we've built up rights in that name in reliance upon our use. And to now somehow say, well, you can't have it doesn't make any sense. And I think tellingly is the argument that we could register capital city, and they wouldn't object. We're a bank. Really, to me, that's a question of where does the R in a circle go? Because at the end of the day, there's going to be a sign out front there that says capital city bank. So, if we can have capital city. How does make harm when it's generic term, and there's no evidence that consumers have been confused. There's no evidence that consumers are likely to be confused. So, we think really, the board has properly weighed all the factors. The board properly concluded that we should obtain these registrations. We submit that there's been no. Uh. Evidence established or shown in this in the. In the appeal that would warrant a reversal of the board's decision, and we think it should be upheld in all respects. If you have any other questions, I'm prepared to answer them. Otherwise. Thank you, Mr. Bernardo. Our next you have a little over a minute. I'll be brief. I agree that the mark is capital city. It started in 1895 capital city. It changed its name in 1945 to capital city national bank, which obviates the problem changed back. It's Marcus capital city could have an unrestricted standard character registration for capital city because it doesn't include city bank. And you don't have this issue with respect to the reasonable variation standard. Laser swing, which is an opinion of this court and others established that you don't look. You can't defend or narrow consideration of a standard character registration or application based upon historical use. It's not. How are you going to determine reasonableness if not in the marketplace? And how do you know what the marketplace is without looking at history? Your honor, I guess initially I would say laser swings squarely says you cannot look at history. And I think the reason the reasoning being this people change. I mean, a standard character application endures. And the fact that it's determining reasonableness, you have to have a standard. The standard always in this field is the consumer in the marketplace. That requires you to look at the history of the marketplace. It requires to look at the history of the marketplace for all of the factors, except in a standard character application. You look at the variations there. Just to respond to a Judge Prowse question. An example of there being actual confusion in using city bank with a geographic term is in the San Francisco litigation where there's an injunction. Finding actual confusion. Because they use CITY bank in connection with financial services, unlike capital city, which hasn't used it that way. There was actual confusion. Court found infringement and issued an injunction. Thank you, Mr. Clayton.